IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENITO GONZALES-PERALES,** | : | **CIVIL NO. 1:CV-05-1322** |
| | : | |
| **Petitioner** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DONALD J. MONICA, District** | : | |
| **Director, U.S. Citizenship and** | : | |
| **Immigration Services,** | : | |
| | : | |
| **Respondent** | : | |

# M E M O R A N D U M

Plaintiff filed his complaint on July 1, 2005, seeking relief from the denial of his petition for naturalization by an immigration judge.  On January 19, 2006, the court held a non-jury trial with respect to Plaintiff's complaint.  For the reasons that follow, the court will issue an order directing Defendant to approve Plaintiff's application to be naturalized as a citizen of the United States.


## I.    Findings of Fact

The parties have stipulated to all relevant facts.  Plaintiff was born on March 21, 1971 in Nuevo Laredo, Mexico.  His father was Jose Gonzalez and his mother is Ofelia Perales.  Plaintiff is one of ten children.  At six years of age, Plaintiff was admitted to the United States as a permanent resident.  From that time, Plaintiff has been a continuous permanent resident of the United States.  From 1977 to 1986, Plaintiff attended public schools in Laredo, Texas.  In 1986, his mother and family moved to Florida where he attended Florida public schools from October 6, 1986 to December 4, 1987.

Plaintiff's father was killed in a work related accident in 1982.  As a result of his father's death, Plaintiff eventually quit school in order to work and provide financial support for his family.  Plaintiff has been gainfully employed for approximately the past fifteen years, and during that time Plaintiff has paid all relevant taxes.

In May 1999, Plaintiff was married to Lua Noelia Cervantes.  From that marriage Plaintiff has two sons, both U.S. citizens: Kevin Gonzales born on March 2, 2002 and Brando Gonzalez born on April 9, 2004.

Plaintiff was employed by Borton Industry ("Borton") for approximately 12 years.  According to Plaintiff's trial testimony, his work with Borton required substantial traveling.[1]  Plaintiff left his employment with Borton and began working for Conewago Enterprises, Inc. ("Conewago") in 2004.  According to Plaintiff's trial testimony, he left his employment with Borton so that he could spend more time at home with his family.  Plaintiff's home is located in Hanover, Pennsylvania where Conewago Enterprises is also located.

On March 18, 1992, Plaintiff was arrested and charged in Shelby County, Tennessee for possession of more than 70 pounds of marijuana with the intent to sell. However, the charge of intent to sell was dropped, and Plaintiff pled guilty to a misdemeanor of simple possession of a controlled substance.  Plaintiff was sentenced to a probationary term of 11 months and 29 days and fined 5,000 dollars.  Plaintiff paid the fine and complied with the terms of his probation.  On March 10, 1996, Plaintiff was arrested in Fostoria County, Ohio for driving under the influence.

---

[1]Plaintiff's employment with Borton involved the construction of silos throughout the United States.

2

Plaintiff paid a fine and had his license suspended for one year. Other than these two arrests, Plaintiff has never been arrested or charged with any crime.

On August 11, 2003, Plaintiff filed an Application for Naturalization. In his application, Plaintiff disclosed his prior criminal convictions. On October 13, 2004, Plaintiff's application was denied by an immigration judge. On that same date, the Immigration and Custom Enforcement Agency issued a Notice to Appear, charging that Plaintiff was being subject to removal as an alien who has been convicted of a controlled substance offense.

Plaintiff appealed the immigration judge's ruling; however, the immigration court found that it was prohibited from reviewing Plaintiff's application because Plaintiff was in removal proceedings. On June 21, 2005, Plaintiff's removal proceedings were cancelled. Plaintiff filed his complaint on July 1, 2005, and trial was held on January 19, 2006.

## II.    Legal Standard

This court has jurisdiction over this action under the provisions of 8 U.S.C. § 1421, which provides that

> [a] person whose application for naturalization under this title is denied, after a hearing before an immigration officer under ¶ 336(a), may seek review of such denial before the United States District Court for the district in which such person resides in accordance with Chapter 7 of Title 5, United States Code. Such review shall be de novo and the Court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421.

It is well established that Plaintiff bears the burden of establishing his eligibility for citizenship. *Berenyi v. District Director*, 385 U.S. 630, 671 (1967). Moreover, any doubts should be resolved in favor of the Government and against the Plaintiff. *Id*.

## III.   Discussion

8 U.S.C. § 1427 provides the requirements for determining whether an individual is eligible for naturalized citizenship.  In the instant case, the Government does not dispute that Plaintiff has met all of the requirements of the Immigration and Nationality Act to become a citizen of the United States except as to whether Plaintiff has shown to be, for a least five years prior to the date of the filing of his application for naturalization, "a person of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States."  8 U.S.C. § 1427(a).  Plaintiff contends that within the statutory time period he has established that he is a person of good moral character.

To begin, the court notes that 8 U.S.C. § 1427(e) provides, in pertinent part, that

> [i]n determining whether the applicant has sustained the burden of establishing good moral character . . . the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

8 U.S.C. § 1427(e).

A majority of federal courts have held that while a court may look to events outside of the five-year period, the court may not rely solely on events outside of the five-year period.  See *Ikenokwalu-White v. INS*, 316 F.3d 798, 805 (8th Cir. 2003) ([C]onduct predating the relevant statutory time period may be considered relevant to the moral character determination under 8 U.S.C. § 1254(a)(3), but that such conduct cannot be used as the sole basis for an adverse finding on that element.); *Santamaria-Ames v. INS*, 104 F.3d 1127, 1132 (9th Cir. 1996) (*But the ultimate fact to be determined, and the only material one, is* [petitioner's] *moral character within the specified period.*); *Marcantonio v. U.S.*, 185 F.2d 934, 937 (4th Cir. 1950) (It is not permissible . . . to base denial of naturalization of the commission of crimes prior to the five year period, for the effect of this is to add to the statute a condition which it does not contain.); *Gatcliff v. Reno*, 23 F. Supp. 581, 585 (D.V.I. 1998); *Tan v. INS*, 931 F.Supp. 725, 731 (D. Haw. 1996).

The Government does not point to any conduct within the statutory time period establishing that Plaintiff is of unfit moral character to become of a citizen of the United States.  During trial, the Government produced no witnesses to contradict Plaintiff's claim that he is of good moral character.  Instead, the Government appears to rely almost solely upon Plaintiff's 1992 misdemeanor drug possession offense.  In its pretrial brief, the Government argues that "[g]iven the seriousness of this offense (the likelihood that Plaintiff was engaged in transporting and/or possessing with intent to sell and/or deliver the large load of marijuana)" (Doc. 25) the court should deny Plaintiff's petition.

With respect to the Government's argument, the court will plainly state that Plaintiff is not being retried for his misdemeanor conviction of simple

5

possession.[2]  This is not a forum where the Government can appeal the Tennessee State Court's conviction.  While the Government attempts to direct the court's attention to the weight of drugs in question, the Tennessee State Court was also aware of said amount, and in its discretion reduced the charges pending against Plaintiff from possession with intent to distribute to a misdemeanor possessory offense.

The court does not discount the seriousness of the offense; however, a misdemeanor drug possession offense that occurred approximately 11 years before Plaintiff filed his application for naturalization is not enough to deny Plaintiff citizenship.  As stated, the Government may point to conduct outside of the statutory time frame to discredit Plaintiff's assertion that he is of good moral character; however, such conduct cannot be used as "the sole basis for an adverse finding on that element."  *Ikenokwalu-White v. INS*, 316 F.3d 798 (8th Cir. 2003).

The only other issue the Government brings to the court's attention is Plaintiff's DUI conviction that occurred approximately 7 years before Plaintiff filed his application for naturalization.  The court notes that Plaintiff paid a fine and complied with the one-year suspension of his license.  The court is fully aware of the

---

[2]The court notes that at trial Plaintiff asserted that the drugs in question were not his. Plaintiff asserted that he was going on vacation with family to Florida.  The family was traveling in two vehicles.  Prior to leaving, Plaintiff agreed to transport an individual's luggage to Florida on the premise that the individual was soon moving to Florida and needed help transporting his belongings. According to Plaintiff the drugs, unbeknownst to him, were packaged in a locked suitcase and placed in his mother's car.  Plaintiff and his family were stopped by the police in Tennessee.  The responsible parties consented to a search of the vehicles and the locked suitcase. Plaintiff alleged that when the police discovered the drugs, they threatened to place his mother under arrest.  Plaintiff stated that he took responsibility for the drugs because he was responsible for accepting the luggage.  Although the Government attempted to refute Plaintiff's assertion, there is nothing to indicate that Plaintiff is not being truthful.  The court notes that all of Plaintiff's witnesses either indicated that they were unaware of the entire incident or that Plaintiff had presented the same account of events to them.

seriousness of this crime as well; however this offense is also not enough to deny Plaintiff's application for naturalization.

While the court finds that the misdemeanor drug offense and the DUI conviction are not enough to deny Plaintiff's application for naturalization, the court's inquiry does not end here.  As stated, Plaintiff bears the burden of establishing that he is of good moral character.  *Berenyi*, 385 U.S. at 671.

At trial, the following individuals testified on Plaintiff's behalf.  First, Father Bernardo Pistone of Saint Francis Xavier Catholic Church testified that Plaintiff attends church faithfully with his family.  Father Pistone also testified that Plaintiff is well respected in the community and is a person of good moral character.  Father Pistone based his testimony on contact he had with Plaintiff while at church services and other church functions.

Next Plaintiff testified on his own behalf that he is of good moral character. Plaintiff testified that he does not use drugs.  With respect to alcohol consumption, Plaintiff testified that only drinks occasionally, and that he limits his consumption to a couple of beers.  Furthermore, Plaintiff testified that he never drives after he has consumed alcohol.  Additionally, Plaintiff testified as to his strong commitment to his wife, children, and extended family.

After Plaintiff testified on his own behalf, John Dusman, who is Plaintiff's supervisor at Conewago Enterprises testified that he has worked with Plaintiff for over one year and that he and Plaintiff speak often throughout the day.  According to Mr. Dusman, Plaintiff is reliable, hard working, and a dedicated family man. Additionally, Mr. Dusman stated that he wished he could have 99 more employees

like Plaintiff.  The court notes that Mr. Dusman stated that he took unpaid time off from work so that he could come and testify on Plaintiff's behalf.

The fourth witness to testify on Plaintiff's behalf was Jason Mummert.  Mr. Mummert testified that he has known Plaintiff for approximately 6 to 7 months.  Mr. Mummert testified that he has interacted with Plaintiff in social settings and that Plaintiff appears to be loving and caring father.  Mr. Mummert testified that Plaintiff has watched Mr. Mummert's girlfriend's children on occasion.  Additionally, Mr. Mummert testified that he has never known Plaintiff to use drugs or to be drunk.

Finally, Eric Marquez testified on Plaintiff's behalf.  Mr. Marquez is the apartment complex supervisor where Plaintiff and his family live and Plaintiff's neighbor.  Mr. Marquez testified that he has known Plaintiff for two years and in that time Plaintiff has always been a good neighbor.  According to Mr. Marquez's testimony, Plaintiff always pays his rent on time, is very helpful with other residents of the apartment complex, and is a responsible person.

Plaintiff's counsel inquired with each witness whether they believed Plaintiff was of good moral character and whether Plaintiff should be admitted as a citizen of the United States.  Each witness asserted that they believed that Plaintiff was of good moral character and that he should be granted citizenship.

The Government inquired with each witness, aside from Plaintiff, whether their assessment of Plaintiff's fitness for citizenship would change in light of Plaintiff's drug conviction.  Each witness asserted that their opinion that Plaintiff should be admitted as a citizen of the United States would not change in spite of Plaintiff's 1992 drug conviction.

While the government did not directly dispute any of the witnesses' testimony, the Government asserted that the witnesses have not known Plaintiff throughout the entire statutory five year period. While Plaintiff did not produce witnesses who have known him the entire statutory time period, it is not a requirement of the statute that Plaintiff do so. *See* 8 U.S.C. § 1427. The court notes that the reason why Plaintiff was unable to produce non-family member witnesses on his behalf who have known him for over five years is because he recently moved. As noted, Plaintiff's previous job entailed extensive traveling, whereas Plaintiff's new job does not require him to travel and enables him to spend more time with his family. The court finds that Plaintiff's witnesses from his employment, residential community, and religious community all support Plaintiff's assertion that he is a person of good moral character.

Additionally, Plaintiff is able to show that during the statutory period he has been gainfully employed and consistently paid his taxes. Plaintiff is also able to demonstrate that he has joined the Catholic church, he has become married, and has two young children. While these events do not in and of themselves establish good moral character, the court finds that they support Petitioner's assertion that he is of good moral character. Based upon the evidence, the witnesses' testimony, and the lack of any evidence to the contrary, the court finds that Plaintiff has met his burden of establishing that he is a man of good moral character.

**IV.**     **Conclusions of Law**

     1) This court has jurisdiction in this matter.

     2) Plaintiff has met all conditions of 8 U.S.C. § 1427, including § 1427's requirement that the individual be of good moral character.

     3) The court will grant the relief requested by Plaintiff in his complaint and issue an order directing Defendant to approve Plaintiff's petition for naturalization.


                              s/Sylvia H. Rambo
                              SYLVIA H. RAMBO
                              United States District Judge

Dated:  January 26, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENITO GONZALES-PERALES,** | : | **CIVIL NO. 1:CV-05-1322** |
| **Petitioner** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DONALD J. MONICA, District** | : | |
| **Director, U.S. Citizenship and** | : | |
| **Immigration Services,** | : | |
| | : | |
| **Respondent** | : | |

# O R D E R

In accordance with the foregoing findings of fact and conclusions of law, **IT IS HEREBY ORDERED THAT**:

1) Defendant is directed to approve Plaintiff's Application for Naturalization.

2) Plaintiff shall file the appropriate forms for attorney fees, setting forth hours spent and description of services and an affidavit setting forth attorney's experience, years in practice, and hourly rate.

3) Defendant shall have fifteen (15) days to file a response to Plaintiff's request for attorney fees.

                                   s/Sylvia H. Rambo
                                   SYLVIA H. RAMBO
                                   United States District Judge

Dated:  January 26, 2006.